Whatever the legal outcome, Mr. McGonagall, please thank your clients for their service. I will make certain of that. Thank you. Mr. Baranowski, you may proceed. May it please the court, the primary issue on this appeal is whether there is substantial evidence that the liquid dosage dispenser of the Chilcot reference is reasonably pertinent to the problem with which the present invention is involved. Or, in other words, whether Chilcot would have logically commended itself to Mr. Wilkinson, the inventor's attention, when he was considering his problem. Actually, the sole argument is that Chilcot isn't analogous prior art. Correct. And that is actually the second prong of the analogous test, the first prong of which is whether the reference, the prior art reference, is in the same field of the invention. But the board and the PTO has admitted on page 11 of their brief that the Chilcot reference is not in the same field. So then the second prong of whether the reference is analogous is... If we conclude that substantial evidence supports the PTAB's determination that Chilcot is analogous prior art, do you have anything else? No, if that's the conclusion. And I want to put forth three reasons today why that is not the proper conclusion. The first is that the board improperly defined the inventor's problem when it characterized the inventor's problem in its decision. And for that reason was concluded that the Chilcot reference was reasonably pertinent to the problem. Let me ask you another. These are housekeeping questions, really, about how one drafts an opinion. When you address claims 15 and 16, you incorporate your arguments as to claims 1, 14, 22, 25. So do you agree that 15 and 16 rise or fall with those other claims? Yes, with the same arguments. And if Chilcot is an analogous reference, then they fall. If Chilcot is not an analogous reference, we would contend that the rejections cannot stand and it would be non-obvious. So the first point is that the board improperly defined the problem. The second point is when the problem becomes properly defined, the problem of the inventor face, in this case, is very different than the problem that the Chilcot reference faced. And the third point is that the environments with which the invention operates are very different than the environments with which the Chilcot reference invention operates. And so those three points I want to expand upon. The first point is that Mr. Wilkinson was faced with the problem of providing a mattress or cushion that can support the weight of a body and prevent tissue damage to that body that addressed the disadvantage of the prior art. So the disadvantage of the prior art that he saw was that prior art systems were either powered in order to reform or used a foam within the cells that required an additional element within the cells in order to create the spring force to reform. What Mr. Wilkinson decided was to try to create a spring bias in the actual outer construct of the cell itself. And so in so doing what he did was he created a helical structure in the outer structure of the cell itself that would create the spring bias. Now, as described in the application, Mr. Wilkinson found that the helix shape was particularly beneficial within the realm of supporting the human body, quote, in controlling the stability and deflection of the fluid cell, such that the fluid cell closely maintains its alignment parallel to its vertical rotational axis during compression and reformation. And that's from the patent itself of Appendix 1392. So he was coming up with this helical solution that was particular to the problem of trying to support the load of a body. And the body in the patent was defined as a patient, a person, or an animal. So we're talking about a living, breathing, moving thing that was actually being supported by the actual fluid cell. So the board, however, when improperly, in our view, determining that the reference was analogous, said that the problem concerns, quote, how to provide a self-inflating fluid cell having a reforming element to cause the cell to return to its expanded configuration. So there's no mention in the problem definition by the board of actually having to support a body, a significant body weight by the cell. And in fact, Chilcote doesn't do that. Chilcote teaches that it just is manually compressible. It's a liquid dosage dispenser that's manually compressible by hand. And so when you compress it, the dosage comes out. It's not configured to support a load or to be operating under the high pressures that a mattress fluid cell would operate. So in so defining the problem incorrectly, the board was able to conclude improperly, in our view, that the reference was reasonably pertinent to the problem, but they defined the wrong problem. And that was their first error. And that error was also a similar error that the court found in Inri Hoytaker, which was a case where the prior art reference was a garment hook for hooking garments. But the invention was related to a hooking mechanism for a hose clamp to keep the hose clamp in a preassembled state. And so the board, in that case, defined the problem as a hooking problem and read out the whole functionality of the hose clamp. In that case, the court reversed the board's decision and said that this was a problem related to a hose clamp. Similarly, in Inri Klein, as well, the court found that the USPTO on appeal erred by misdefining the problem as a compartment separation problem. Would you agree that whether a reference is analogous is a question of fact? Yes, it's a substantial evidence standard, correct. Okay. Most of your brief and the cases you're discussing now don't deal with support by substantial evidence. That's not correct. Inri Hoytaker, Inri Klein, I will be talking about Inri Klein, as well. They all are substantial evidence standards where we're in the same procedural posture where we're appealing the board's decision. What I'm saying is you're not addressing, those cases don't address whether this is supported by substantial evidence. It's a fact question. Those cases do support, those cases do turn on the question of fact. The court in those cases decided that there was no substantial evidence, so it was the same standard. Let me say this. Okay. I'll make it clear. I hope. Can you identify any aspect of the PTAB's decision that is not supported by substantial evidence? I don't think any aspect of the PTAB's decision is supported by any evidence, let alone substantial evidence. Okay. As we said, they misdefined the problem in the first place. Now, let's turn to the second point. The second point being that the actual problems, which are trying to support the load of a patient, is what our actual problem was, whereas in the Chilcot reference, the actual problem was to be able to dispense fluid to a recalcitrant patient. So totally different problems. When you're pressing the bottle, what you need or what Chilcot is describing is some kind of arrangement that, when subjected to a force, will compress, and when the force is lifted, will return to its position. Why does it matter whether it's a finger-created force or a gravitation force? So my third point was about the environmental conditions. For example, the case of Henry Clay found that where the prior art reference was a petroleum extraction method and the actual invention was a petroleum storage invention, the court found that the differences in pressures, the differences in temperatures, were differences that the two inventions were in different environments and for different purposes. So here, the reason why it matters is because the Chilcot reference, there's no pressure that the internal cell is having to maintain when you're pressing it. It's just expelling fluid and relieving pressure. In our case, we're operating at high pressures, at least the pressures of actually having to support the load of a body. So the pressures are totally different and the environment is totally different for another reason, being the durability of our invention versus the Chilcot reference. Chilcot is described as a one-time use or a multi-use in its description. So it's basically contemplating a disposable device. In ours, our environment is not something that you can just throw away. You're sleeping on it. You can't throw away a bed every time you get up from a night's sleep. And even when you're sleeping on it, it's having to compress and decompress multiple times. And as we described, the helix was particularly useful in maintaining the positional geometry during those compressions and expansions. So they're totally different environments. And so the question is whether a person of ordinary, or whether the inventor, excuse me, would have looked to the Chilcot reference, would have looked to this reference that was so out of left field, the fact that it was not trying to solve the same problem, that it was not operating under the same environmental conditions. So that's really the inquiry on whether something's analogous. It's not whether the exact structure of the helix is shown. That's not the inquiry. As shown in the case law, for example, I believe it was Oedeker where the invention was relatively simple mechanically, and the court found that a simple mechanical invention can still be patentable, and that the hosiery hook was not an analogous reference because it was for a different field, trying to solve a different problem. If you're into your rebuttal time, feel free to keep using it. No, I will close. Thank you. So yes, those are my main points. Thank you. Ms. Craven? Good morning. May it please the court. Wilkinson concedes that his particular problem that he was facing, as the board found, was to provide a self-inflating fluid cell with a reforming force or spring bias. And Wilkinson just wants the scope of that particular problem then narrowed for use in a mattress or a cushion to support a human body. And that really collapses the analogous art reasonable pertinent prong of the analogous art test into Wilkinson's field of invention of mattresses and cushions. And Chilcott, it's conceitedly not in the same field of invention of mattresses and cushions, but it is reasonably pertinent to the problem of providing a self-inflating fluid cell. Chilcott contemplates that one of his objectives is to provide a single cell that has a built-in cushioning property and that it would reform to its original shape after an external load is removed. Is there any evidence in the record that shows that a person of skill would have found it obvious to employ methods for oral administration of medications to reforming mattresses? I mean, the oral administration part is not... The board found that Chilcott was addressing the same problem of providing a self-inflating fluid cell. And Chilcott is a fluid cell where you're pushing it and you're administrating a liquid to a patient, but the fluid cell in the mattress is also a fluid cell that dispenses the liquid into the reserve of the mattress when there's a support on it. So they're both, in a sense... So you get by Ethicon by saying, well, that's the particular problem. That's the particular problem. And I think because Wilkinson is conceding that providing the self-inflating fluid cell is his particular problem, just wanting the particular problem narrowed to supporting a body in a mattress or cushion, that that's essentially collapsing the reasonably pertinent test into the field of invention. And I think there's also this idea about that the cell has to support the body. The claim is to self-inflating fluid cell in a system, but a single cell doesn't support a body. Just like the drink dispenser, a single cell of it couldn't support a body. It's the idea that you would put these cells in an array, and that together they would support the force of a body. And because the Chilcott fluid cell is supporting an external force and then using what the examiner said was that known engineering principle of using that helical configuration to then self-inflate, that is why Chilcott is reasonably pertinent to this particular problem as Wilkinson has defined it for the self-inflating fluid cell. So unless there's any other questions, I'll give up most of my time.  So just one point. The embodiment in the specification shows nine cells, but they do have to support a human body in a matrix. And so I don't think, it sounded like she was suggesting that you could just plug the Chilcott reference into the mattress and it would work. And I submit that common sense, which some of the case law talks about with respect to this standard, would tell you that if you put the Chilcott liquid dosage dispenser into a mattress, it's not going to end up being a happy night for whoever is sleeping on the mattress. So other than that, I would also just, I guess I'll just leave it at that. Thank you. Okay. Thank you, counsel. The matter will stand submitted.